IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW KATONA,
        PLAINTIFF            *

                         *

  V.

DONNA ASURE, WARDEN OF (MCCF),    *
WILLIAM CARVER, SERGEANT OF (MCCF),
JAMES SHEA (FORMER) SERGEANT OF (MCCF),
JEREMY STORM, CHRISHTOPHER OKALA,  *
JAMES CAIN, WILLIAM TRAVIS,
THOMAS DESIMONE, VINCENT STASULLI,
AND DONALD KUBIK, WENDY MICHELE JOHNSON,  *
HEALTH SERVICE ADMINISTRATOR OF (MCCF) &
MICHELLE LYNN OSWALD,
LICENSED PRACTICAL NURSE AT (MCCF);  *
MONROE COUNTY COURT DEPUTY BLANEY, &
MONROE COUNTY COURT DEPUTY JOHN DOE,
SUED IN THEIR INDIVIDUAL CAPACITIES,  *
        DEFENDANTS.

CASE NO. 1:11-CV-1817

U.S. JUDGE RAMBO

MAG. JUDGE MANNION

JURY TRIAL DEMANDED

**FILED
SCRANTON**

DEC 2 6 2012

PER_____
        DEPUTY CLERK

## AMENDED COMPLAINT

    This is a civil rights action filed by Matthew Katona, a state prisoner, for damages under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, alleging the Denial of Free Religious Exercise, Discrimination based on Race and Religion, Excessive Use of Force, failure to intervene in the presence of Excessive Force Use, Denial of Medical Care, and unlawful Solitary Confinement in violation of the First, Eighth and Fourteenth Amendments to the U.S. Constitution.  Plaintiff further alleges the tort of Medical Negligence.

### JURISDICTION

    1.  The Court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. Section 1331 (1) and 1343.

    2. The Court has supplemental jurisdiction over Plaintiff's state law tort claims under 28 U.S.C. Section 1367.

### PARTIES

    3. Plaintiff Matthew Katona was incarcerated at Monroe County Correctional Facility ("MCCF") during the events described in this complaint.

    4. Defendants Jermey Storm, Christopher Okala, James Cain, William Travis, Thomas Desimone, Vincent Stasulli, and David Kubik are correctional officers employed at (MCCF).

    5. Defendant JANE DOE, is a correctional officer employed at (MCCF) whose name is presently unknown to Plaintiff.

6. Defendant James Shea is the former sergeant of MCCF.

7. Defendant William Carver is the sergeant of (MCCF).

8. Defendant Wendy Michele Johnson is a licensed practical nurse and is the Health Care Service Administrator at (MCCF).

9. Defendant Michelle Lynn Oswald is a licensed practical nurse at (MCCF).

10. Defendant JANE DOE is the facility psychiatrist at (MCCF), whose name is presently unknown to Plaintiff.

11. Defendant Donna Asure is the warden at (MCCF).

12. Monroe County Correctional Facility's address is: 4250 Manor Drive, Stroudsburg, PA. 18360.

13. Defendant Deputy Blaney is a deputy employed at Monroe County Courthouse.

14. Defendant JOHN DOE, is a deputy employed at Monroe County Courthouse, whose name is presently unknown to Plaintiff.

15. Monroe County Courthouse address is: 610 Monroe St. Stroudsburg, PA.

16. All of the Defendants have acted under color of state law at all times relevant to this complaint.

## STATEMENT OF FACTS

17. On February 10, 2011, Plaintiff was transferred from State Correctional Institute Coal Township to (MCCF) for a court hearing.

### Unlawful Solitary Confinement

18. Upon Plaintiff's arrival at MCCF, Defendant Asure (hereinafter referred to as "Asure") singled Plaintiff out, and ordered his solitary confinement detention in Disciplinary Segregation Status ("DS").

19. State prisoners are "normally" held in the facilities general population.

20. Asure did not serve Plaintiff with any notice of a jail infraction or charge, or any other report to warrant DS, nor did he have a hearing to express his views opposing his DS prior to this abnormal detention.

21. Plaintiff is a muslim and is sincere in his belief.

### Verbal Abuse That Lead to Excessive Force

22. On February 23, 2011, Plaintiff was in a prostrate position as he made pray in his cell, when Defendant Storm (hereinafter referred as "Storm") approached. Storm stated, "Get your head off that floor you fake white muslim and while you're on your knees you want to suck my nuts like the big boys make you do upstate."

23. Storm proceeded to enter Plaintiff's assigned cell and put him in restraint shackles.

24. "Why are you disrespecting me and my religion for no reason?" Plaintiff asked.

Storm smacked Plaintiff's Kufie (a muslim head cap) from his head and stated, "Because I hate fake white muslims."

25. Plaintiff backed up and said, "You don't have a right to put your hands on me. I'm going to sue you." Storm stepped towards Plaintiff with an angered facial expression and punched Plaintiff with a closed fist in his right eye. Plaintiff's right eye split and blood began leaking over Plaintiff's face and clothes.

26. Storm exited the cell. Soonafter, Plaintiff stepped outside his cell and proceeded to call for medical assistance and report the assault.

27. Defendant Okula (hereinafter referred as "Okula"), on the top tier, ran down the stairs and picked Plaintiff off his feet (while Plaintiff was still shackled) and slammed Plaintiff onto his head. Plaintiff loss consciousness.

28. Sometime later, Plaintiff awoke to a punch to the jaw and observed Storm punching Plaintiff in the face with a closed fist (while Plaintiff was in restraints behind his back). Plaintiff yelled for Storm to stop punching him.

29. Okula stood at the assault scene and did not stop Storm from assaulting Plaintiff.

30. Rovers/Staff Assistance arrived sometime after and when they did, Plaintiff was still being assaulted by Storm.

31. The Rovers were identified as Defendants "Shea", "Carver", "Cain", "Travis", "Desimone", "Stasulli" and "Kubik."

32. While Plaintiff was beaten bloody, in extreme pain and still in restraints from behind his back, Shea was the first to join in on the beating, by striking Plaintiff with a closed fist on the right side of his face and then began kicking Plaintiff in his right rib area.

33. Plaintiff observed Kubik strike him on the thigh at least two times.

34. Kubik, Carver, Cain, Travis, Desimone, and Stasulli failed to intervene to prevent these said blows as they witnessed the assault taking place.

35. Shea stopped punching Plaintiff and asked Carver "Did you get your shots in?"

36. Someone in the above group inquired about Plaintiff being brought to medical because he needed medical attention.

37. Rather, Shea, Kubik, Carver, Cain, Travis, Desimone, and Stasulli denied Plaintiff immediate medical treatment for the wounds he sustained from the aforementioned Defendants and put him in a "restraint chair."

38. Defendant Jane Doe, the facility psychiatrist was briefed on Plaintiff's

assault, and injuries and elected for Plaintiff not to receive immediate medical care.

39. Plaintiff's clothes was removed, and despite it being in the cold month of February, he was kept in the restraint chair with only a boxer brief.

### Denial of Medical Care

40. Plaintiff expressed to Shea, Storm, Okula,    , Kubik, Carver, Cain, Travis, Desimone, Stasulli, and Psychiatrist Jane Doe that he was experiencing pain in his right eye, jaw, neck, rib, thighs, ankles, was dizzy, suffering from a headache, needed medical attention, wanted his injuries photographed and was visually beaten and bloody.

41. The foregoing Defendants denied Plaintiff medical care for the said injuries they caused or failed to stop and denied to photograph any of Plaintiff's injuries for the record.

42. After two hours, Psychiatrist Jane Doe ordered the above Defendants to remove Plaintiff from the restraint chair in accord with the Facility 2 hour limitation.

43. Plaintiff was put in a secure, cold and torturous cell with only a pair of boxer brief underwear.

44. Asure came to the secure cell where Plaintiff was detained.

45. Plaintiff advised Asure that he was assaulted by the above said Defendants because of his religion and related race (a white so-called muslim), that he was denied medical care, his body was aching, that he was shivering from being cold and requested that she order that he be taken to the hospital and be provided his clothes.

46. Asure said she was denying Plaintiff medical care and his clothes, and indicated she ordered him in solitary confinement because she believed muslims were trouble-makers. Asure further indicated something to the extent that she did not care how much pain or how cold Plaintiff was — as she walked away from the cell while he tried to talk to her about the assault.

47. Through discovery "Admissions," Asure admitted that she was aware of Shea's past history of being abusive to an inmate in 2007.

48. An anonymous person contacted the State Police that Plaintiff was assaulted, denied medical care and kept in a cold and torturous area with no clothes.

49. On February 24, 2011, State Trooper David P. Hudzinski (Badge No. 8874), came to MCCF and demanded to see and interview Plaintiff. Trooper Hudzinski took pictures of Plaintiff's injuries.

50. Because of the State Troopers' presence, MCCF Lieutenant Labar indicated to Plaintiff that he ordered MCCF officers Ackerman and Peters to take photos of Plaintiff's injuries he suffered from the assault.

51. Soonafter, Ackerman and Peters took pictures of Plaintiff's injuries.

52. Shea was subsequently fired from MCCF, arrested and criminally charged by the State Police for assaulting Plaintiff while in restraints.

53. Carver, Cain, Travis, Desimone and Stasulli wrote police statements as to them witnessing Shea assault Plaintiff and further did not indicate in any of these Police statements that they intervened or stopped the assault as required by the Eighth Amendment of the U.S. Constitution.

54. Plaintiff did not receive x-rays or pain medication until about "17 days" after he was savagely assaulted by the said Defendants. In those approximate 17 days, Plaintiff endured extreme and additional unwarranted pain and suffering to his right eye (that was split), face, neck, rib, legs and ankles.

55. Plaintiff learned that his Quran, prayer book and legal material that was in his cell was destroyed by a JANE DOE.

56. Asure subsequently informed Plaintiff that she was instucting that he be placed back in 8 Cell, in "indefinite solitary confinement", with no hygiene products, bedding, blankets, mattress, water, based solely on his muslim religion.

57. After Plaintiff informed Asure that his Holy Quran, Prayer book and legal material was destroyed by her subordinate, she denied to replace Plaintiff's said property.

58. A tenet of Plaintiff's muslim faith is to pray 5 times a day (in which requires the body to be cleanse in an act referred to as "Wu'du" before offering each prayer), and to read and recite the Quran daily. Without providing Plaintiff with water he could not conduct Wu'du to cleanse himself, and a Quran to read and to daily recite.

59. Soonafter, Plaintiff received falsified misconduct reports in an attempt to cover the Defendants said criminal acts although they practically all provided contrary police statements that a crime was in fact committed against this Plaintiff.

60. Nevertheless, Plaintiff was found guilty of the said falsified misconduct reports and sanctioned to approximately an additional 1 year detention in solitary.

61. Plaintiff was denied water for 7 days and further denied water on two separate occasions for 3 to 4 days, denied food trays on a regular basis, and denied clean laundry and cell-cleaning supplies to clean a filthy, feces and urine infested cell.

5

62. Azure denied Plaintiff copies of the aforementioned police report to use as documentary evidence in his misconduct hearing. This denial was based on a legitimate penological interest.

63. Defendants Johnson and Oswald failed to order x-rays of Plaintiff's rib area after he made several complaints that he was suffering and in extreme pain in his rib cage area.

64. Prior to Plaintiff's above assault by Storm, Shea and Okala, Plaintiff made Asure aware of Storm and Shea's dislike of his muslim faith and their threats to assault him, and she failed to separate them from working on the same unit as Plaintiff or take any other corrective action.

65. Asure was aware of Shea's prior abuse against inmates and still she promoted him to sergeant.

66. On January 4, 2012, Plaintiff was transported   — to the Monroe County Courthouse.("MCC").

67. Plaintiff was placed in a holding cell to speak with his attorney, william, waltkins

68. After Plaintiff spoke with his said attorney, and _waltkins_ left the visiting area, Defendant Blaney (hereinafter referred to as "Blaney"), gave _waltkins_ all of Plaintiff's legal material without Plaintiff's permission.

69. Plaintiff inquired about his said legal material and indicated that all his legal property was not suppose to go to _waltkins_. Blaney stated, "If you don't keep your mouth shut, I will shut it for you." Plaintiff replied, "All I want is to speak with my attorney to get my legal papers returned to me." "I'll get your lawyer alright," Blaney responded.

### Excessive Force

70. Blaney opened Plaintiff's holding cell without first restraining Plaintiff in handcuffs, and stated, "Let me see how tough you are, get up and fight." Plaintiff replied, "I don't want to fight you, I just want my lawyer."

71. Blaney lunged at Plaintiff, struck him in the face with a closed fist and slammed Plaintiff on the floor. Soonafter, Blaney put Plaintiff in restraint handcuffs from behind Plaintiff's back and began striking Plaintiff in the back of his head.

72. Deputy JOHN DOE appeared on the scene and failed to intervene to prevent Plaintiff being further striked and assaulted.

73. Plaintiff was hit in the right eye, and had a bloody nose. Blaney and Deputy John Doe failed to get Plaintiff any medical care or take photographs

of Plaintiff's face and injuries.

74. Plaintiff was subsequently transferred back to MCCF by unknown Deputies.

75. An unknown MCCF officer inquired what happened to Plaintiff's face when Plaintiff arrived back to MCCF.

76. Pictures were subsequently taken of Plaintiff's face by MCCF medical staff.

77. All the Defendants acted with an evil motive or reckless indifference for Plaintiff's United States Constitutional rights.

78. All the Defendants violated clearly established law and constitutional rights of which a reasonable person would have known was unjust, abusive or contrary to established law and their department code of ethics and policy.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

79. Plaintiff exhausted all available administrative remedies pursuant to established law. Plaintiff filed a grievance on the issues raised herein. Plaintiff did not receive any response. Plaintiff inquired to Azure about hearing these issues and she never responded to Plaintiff's request. Plaintiff attempted to file a second grievance on these matters, and was denied a grievance form to do so.

### COUNT ONE: EXCESSIVE FORCE OR FAILURE TO PREVENT EXCESSIVE FORCE

80. Paragraphs 1-79 are incorporated by reference as though set forth in full.

81. The actions of Storm, Okula, Shea, Kubik, Carver, Cain, Travis, Desimone, Stasulli, Blaney, MCC Deputy John Doe, and Asure in using physical and excessive force against Plaintiff while he was handcuffed behind his back, or in restraints, outlined herein, without need or provaction, or failing to intervene to prevent the misuse of force outlined herein, was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

82. The further actions of Asure in refusing to terminate Shea from his prior inmate abuse acts put Plaintiff and others at risk to serious harm and her knowledge of the prior abuse of her subordinate (Shea and others) demonstrates she was acquiesced in her subordinates' violations, and her lack of a issuing a no-tolerance-excessive-force policy violated Plaintiff's Eighth Amendment rights to the U.S. Constitution.

83. Storm's and Blaney's verbal abuse that lead to excessive force was further unconstitutional. Harris v. Chapman, 97 F.3d 499, 505-06 (11th Cir. 1996); Herrera v. Valentine, 653 F.2d 1220, 1225-26 (8th Cir. 1981).

84. The actions of Asure, Shea, Kubik, Carver, Cain, Travis, Desimone, Stasulli, Psychiatrist Jane Doe; Blaney and MCC Deputy John Doe in failing to permit Plaintiff to obtain prompt medical care for his injuries sustained from the use of excessive force, or failing to report and photograph these injuries were in violation of the Eighth Amendment of the U.S. Constitutional.

85. The actions of Defendants Johnson and Oswald, in not giving Plaintiff any pain medication for approximately "17 days" for the serious injuries he sustained and pain he experienced, and never taking any x-rays of Plaintiff's "pained rib" constituted deliberate indifference to Plaintiff's serious medical needs.

## COUNT TWO: DUE PROCESS CLAUSE VIOLATIONS

86. Paragraphs 1-79 are incorporated by reference as though set forth in full.

87. The actions of Asure in singling Plaintiff out and placing him in solitary confinement solely because of his choice of religion (a muslim), as described in paragraphs 45 and 56, and in Storm using verbal-sexual-abuse described in paragraphs 22-25 herein, in acting out of religious prejudice and racial animosity that caused Plaintiff to be put in abnormal conditions of solitary confinement and suffering physical and excessive force were in violation of Due Process and Equal Protection of the laws of the Fourteenth Amendment of the U.S. Costitution.

88. Asure's actions of putting Plaintiff in solitary confinement solely based on his religious faith and without providing Plaintiff with any misconduct reporting charge, or any Administrative Hearing to provide Plaintiff with an opportunity to express his views before the decision and sanction was rendered constituted a violation of Due Process Laws of the Fourteenth Amendment.

89. Asure's further actions of denying Plaintiff documentary evidence (copies of police exculpatory reports) to use at his later misconduct hearing, when the denial was not based on a legitimate penological interest, denied Plaintiff due process in violation of the Fourteenth Amendment to the U.S. Constitution. Burns v. Dept. of Corr., 642 F.3d 163, 173 (3d Cir. 2010).

89. Plaintiff's abnormal conditions of confinement that resulted in "basic human need violations", described in paragraphs 56 & 61, that were collective with an approximate duration of one year constituted an atypical and significant

hardship to the ordinary incidents of prison life to implicate a protected interest. <u>Brooks v. Chappius</u>, 450 F.Supp. 2d 220, 224 (W.D.N.Y. 2006)(citing case law).

## COUNT THREE: DENIAL OF FREE RELIGIOUS EXERCISE

90. Paragraphs 1-79 are incorporated by reference as though set forth in full.

91. The actions of Asure in denying to replace Plaintiff's discarded Holy Quran, prayer book and to provide Plaintiff water to conduct "Wu'du", that is required to offer prayer (5 times a day), and did not leave Plaintiff with any alternative, violated Plaintiff's First Amendment rights of the U.S. Constitution.

92. The actions of Storm in denying and interrupting Plaintiff's offering of prayer, smacking off Plaintiff's Kufi (which was unprovoked) denied his Free Religious Exercise in violation of the First Amendment of the U.S. Constitution.

## COUNT FOUR: MEDICAL NEGLIGENCE

93. Paragraphs 1-79 are incorporated by reference as though set forth in full.

94. The actions of Johnson and Oswald, in not providing Plaintiff any pain or other medication for approximately "17 days" for the serious injuries he sustained and the pain he experienced for approximately "17 days", and never taking any x-rays of Plaintiff's "pained ribs" resulted in unwarranted pain and suffering and constituted medical negligence.

## RELIEF REQUESTED

Plaintiff requests that the Court grant the following relief:

A. Trial by jury.

B. For the Court to issue a declaratory judgment that the Defendants acted in violation of the First, Eighth, Fourteenth Amendments of the United States Constitution and that the individual acts of the named Defendants constituted a medical tort.

C. Award compensatory damages in the following amounts:

1. $100,000 jointly and severally against Defendants Storm, Shea and Blaney for the physical and emotional injuries sustained as a result of Plaintiff's said beatings.

2. $50,000 jointly and severally against Defendants Asure, Okula, Carver, Cain, Travis, Desimone, Stasulli, Psychiatrist Jane Doe and MCC Deputy John Doe for failure to prevent or intervene while the Plaintiff was being assaulted and or for the denial of securing Plaintiff's medical care after the assault.

3. $10,000 against Defendant Kubik for his use of excessive force while the Plaintiff was subdued and handcuffed.

4. $50,000 jointly and severally against Defendants Johnson and Oswald for their failure to provide adequate medical care to the Plaintiff that resulted in an Eighth Amendment violation and a Negligence tort.

5. $100,000 jointly and severally against Defendants Asure and Storm for violating Plaintiff's said Fourteenth Amendment rights.

D. Award punitive damages in the following amounts:

1. $50,000 each against Defendants Asure, Storm, Shea, Okula, Kubik, Carver, Cain, Travis, Desimone, Stasulli, Blaney, Psychiatrist Jane Doe and MCC Deputy John Doe.

2. $20,000 each against Johnson and Oswald.

E. Grant such other relief as it may appear to the Court that Plaintiff is entitled.


Pursuant to the penalties of perjury under 28 U.S.C. Section 1746, I verify that the foregoing is true and correct to best of my personal knowledge and belief.

Respectfully submitted,

Matthew Katona
1100 Pike Street, (JP3463)
Huntingdon, Pa. 16654


Date: 12-13-12