UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW KATONA,

    Plaintiff

v.

DONNA ASURE, Warden, et al.,

    Defendants

CIVIL ACTION NO. 1:11-CV-01817

(RAMBO, J.)
(MEHALCHICK, M.J.)

**REPORT AND RECOMMENDATION**

    This is a prisoner civil rights action, initiated upon the filing of the original complaint in this matter on October 3, 2011. (Doc. 1). An amended complaint was filed with leave of court on June 12, 2012. (Doc. 71; *see also* Doc. 70). A second amended complaint was filed with leave of court on February 6, 2013. (Doc. 116; *see also* Doc. 118). The current complaint alleges federal civil rights claims against the warden and several correctional officers at Monroe County Correctional Facility, two nurses and a psychiatrist employed by a contractor for medical services at the Monroe County Correctional Facility, and two Monroe County deputy sheriffs related to events that occurred while Katona was incarcerated at the Monroe County Correctional Facility and in the holding cells of the Monroe County Courthouse to attend hearings before the Monroe County Court of Common Pleas. Katona is currently incarcerated at SCI Fayette, located in Fayette County, Pennsylvania, where he is serving a sentence for robbery and aggravated assault.

    Katona has filed a motion for partial summary judgment against one of the several correctional officer defendants, James Shea. (Doc. 144; *see also* Doc. 145; Doc. 146). Shea has filed a brief in opposition. (Doc. 150).

    The Medical Defendants — licensed practical nurses Wendy Michele Johnson and

Michelle Lynn Oswald, and an unnamed facility psychiatrist[1] — have filed a motion for summary judgment as well. (Doc. 151; *see also* Doc. 152; Doc. 153). Katona has not filed a brief in opposition, nor otherwise responded to the Medical Defendants' motion.

I. **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

---

[1] The facility psychiatrist is identified by Katona in his second amended complaint as "Jane Doe," but the papers submitted in support of the Medical Defendants' summary judgment motion appear to identify this psychiatrist as "Dr. Dedania."

> "The rule is no different where there are cross-motions for summary judgment."

*Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.
>
> *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, __ F. Supp. 3d. ___, 2014 WL 5365322, at *11 (M.D. Pa. Oct. 21, 2014). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## II. DISCUSSION

On March 8, 2010, Katona pleaded guilty to aggravated assault and robbery before the Monroe County Court of Common Pleas, and on May 19, 2010, he was sentenced to serve a term of 3½ to 8 years in prison. *Commonwealth v. Katona*, No. CP-45-CR-0002024-2009 (Monroe County C.C.P.). In February 2011, Katona was temporarily transferred from SCI Coal Township, where he was then serving his prison sentence, to the Monroe County Correctional Facility for a PCRA hearing concerning this same conviction and sentence. On February 22, 2011,[2] Katona claims to have been subjected to the use of excessive force by

---

[2] The second amended complaint alleges that the incident at issue occurred on February 23, 2011. Most evidence in the record, however, indicates that the incident
*(footnote continued on next page)*

several correctional officers at the Monroe County Correctional Facility, followed by the denial of medical care by the three Medical Defendants.[3] Katona has moved for partial summary judgment as to liability alone against one of the correctional officers, defendant James Shea, who was later fired and criminally prosecuted for kicking Katona in the ribs when he had already been subdued by the other officers. The Medical Defendants have moved for summary judgment with respect to all surviving claims against them.[4] Neither side has moved for summary judgment with respect to Katona's claims against the warden or the other correctional officers.

Katona's second amended complaint also raised excessive force claims against two deputy sheriffs whom he claims assaulted him on January 4, 2012, when he was in a Monroe County Courthouse holding cell for a hearing in criminal proceedings against him arising from the February 22, 2011, incident. *See Commonwealth v. Katona*, No. CP-45-CR-0000509-2011 (Monroe County C.C.P.). Neither of these defendants has been served or entered an appearance in this matter as yet.

### A. KATONA'S MOTION FOR SUMMARY JUDGMENT AGAINST SHEA

In evaluating a motion for summary judgment, the Court must first determine if the

---

actually took place on February 22, 2011. At deposition, Katona testified that he was uncertain of the date because some of his records referenced February 22 and others referenced February 23. (Doc. 153-1, at 12). The particular date is not material. This report will adopt the February 22, 2011, date, which is uniformly supported by the materials submitted in support of the instant motions for summary judgment.

[3] Katona also appears to have raised First Amendment free exercise and Fourteenth Amendment equal protection and due process claims against the warden and various correctional officers, but none of these other claims is implicated by the instant motions.

[4] A claim against the Medical Defendants alleging the denial of adequate medical care based on a delay in ordering x-rays of Katona's ribs has already been dismissed. (*See* Doc. 147; Doc. 142).

moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Once that prima facie showing has been made, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

### 1. Katona's Prima Facie Case for Partial Summary Judgment

Katona has filed a motion for partial summary judgment against one of the several correctional officer defendants, James Shea, seeking summary judgment on Shea's liability for the use of excessive force against Katona, but reserving the issue of damages for trial. (Doc. 144). In support, he has submitted a declaration pursuant to 28 U.S.C. § 1746 (Doc. 145), a brief in support of his motion (Doc. 146, at 1–4), and copies of several incident reports prepared and signed by defendants Carver, Cain, Travis, Desimone, and Stasulli describing Shea's actions during the February 22, 2011, incident (Doc. 146, at 5–11).[5]

---

[5] The Court notes that Katona has neglected to submit a separate statement of material facts in support of his motion for partial summary judgment. Under the local rules,

> [a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> . . .
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

L.R. 56.1.

In light of his *pro se* status, Katona was advised at the outset of this action of the requirements of Local Rule 56.1 by the Court's Standing Practice Order in Pro Se Plaintiff Cases, Standing Order No. 94-2 (Feb. 8, 2011). (Doc. 2). The Standing Practice Order advised that "Local Rule 56.1 requires a motion for summary judgment to be accompanied by a separate document containing a short and concise statement of material facts in numbered paragraphs. . . . The local rule further provides that the statements of material fact . . . must include a reference to that part of the record that supports each statement."

*(footnote continued on next page)*

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and (2) "a sufficiently culpable state of

---

Failure to file the required separate statement of material fact is ground for dismissal of a motion for summary judgment, even where the movant is a *pro se* litigant. *See Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 412–13 (M.D. Pa. 2013). But a district court may, in the exercise of its inherent discretion, "depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000); *see also State Auto Prop. & Cas. Ins. Co. v. LaGrotta*, 529 Fed. App'x 271, 273–74 (3d Cir. 2013) (finding no abuse of discretion in a district court's decision to allow a movant to proceed on raw exhibits without a separate statement of material facts where the relevant record consisted only of an insurance policy and underlying state action complaint, and the non-movant articulated no prejudice it suffered as a result of the movant's failure to file a separate statement of material facts).

Mindful of the Court's obligation to liberally construe *pro se* submissions, especially when dealing with imprisoned *pro se* litigants, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013), the undersigned has considered Katona's declaration in support of his motion for partial summary judgment (Doc. 145) to be the substantial equivalent of the required statement of material fact. Although not separate from his declaration of facts based on personal knowledge, it is a short and concise statement of the material facts pertaining to Katona's motion, it is presented in numbered paragraphs, and it specifically references the attached set of written incident reports prepared by other correctional officer defendants — a grand total of seven pages of documentary evidence.

Moreover, unlike the non-movant in *Landmesser*, Shea has not raised Katona's failure to comply with Local Rule 56.1, nor does he appear to have relied on the rule to his detriment in any fashion. The material facts upon which Katona's motion is based are exceptionally simple, they appear to be entirely undisputed, and Shea appears to have understood them clearly based on his opposition brief responding to Katona's motion on substantive rather than procedural grounds, relying exclusively on an argument that Katona has failed to adduce sufficient evidence to support a *prima facie* showing that he is entitled to summary judgment, and declining to cite or proffer any evidence of his own to demonstrate the existence of a genuine dispute of material fact.

Under these circumstances, and in the absence of any apparent prejudice to Shea, it is appropriate for the Court to permit Katona to proceed on his exhibits alone, without a formal statement of material facts.

6

mind" of the defendant official. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

There are different standards for Eighth Amendment violations depending on the type of claim. An Eighth Amendment challenge to prison conditions is subject to the deliberate indifference standard. *See Farmer*, 511 U.S. at 835–36. Prison officials are deliberately indifferent when they know of and disregard a substantial risk of harm to a prisoner. *Farmer*, 511 U.S. at 836. Moreover, a prisoner must produce evidence of serious or significant physical or emotional injury resulting from the challenged prison condition. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). An Eighth Amendment challenge asserting excessive force is subject to a malicious and sadistic standard. The inquiry under this standard is whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6. In an excessive force case, a prisoner need not show significant injury; however, an objectively *de minimis* use of force is insufficient to establish an Eighth Amendment violation. *Hudson*, 503 U.S. at 9–10.

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them"; and (5) "any efforts made to temper the severity of the forceful response."

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

In his declaration, Katona states that he was assaulted by Shea in the manner described in paragraph 32 of his complaint. (Doc. 145, at 2). In that paragraph of the second amended complaint, Katona alleged that, while Katona was restrained with his hands

7

behind his back, Shea struck Katona in the right side of his face with a closed fist and then kicked Katona in the right-side rib area. (Doc. 116, at 3). Katona further states in his declaration that several correctional officers witnessed Shea's acts and filed the attached written incident reports documenting it. (Doc. 145, at 2; *see also* Doc. 146, at 5–11). Finally, Katona states in his declaration that Shea was terminated as a result of this incident, and that he was criminally charged and pleaded guilty on March 15, 2012, to simple assault in connection with this incident. (Doc. 145). Although Katona lacks personal knowledge with respect to Shea's employment status and criminal record, Shea has admitted in his answer to having been terminated, without admitting any particular reason for his termination. (Doc. 149, at 6). Moreover, publicly available court records confirm that Shea pleaded guilty to simple assault on March 15, 2012, that he was sentenced on May 15, 2012, to serve a one-year term of probation, and that Katona was a key witness for the prosecution against Shea. *Commonwealth v. Shea*, No. CP-45-CR-0001395-2011 (Monroe County C.C.P.).

The written incident reports by other correctional officers, each of whom is also a defendant in this action, corroborate Katona's declaration and provide additional details about the assault.

Correctional Officer William Carver reported that:

On 2-22-2011 at approximately 0810 hours I . . . responded to a call for rovers to RHU. While I was in cell 8 assisting in controlling Inmate Katona who was restrained lying face down on the floor Sergeant Shea entered the cell and stated shut him the fuck up! Sergeant Shea then approached Inmate Katona and kicked him in the right side of his torso. Sergeant Shea then asked me if I got my shots in.

(Doc. 146, at 5).

Correctional Officer James M. Cain reported that:

During the indicent with Inmate Kotona [sic] on 2-22-11 I witnessed Sgt Shea kick Kotona [sic]. . . . [U]pon my arrival Inmate Kotona [sic] was in restraints

8

and was being held to the ground while the cell was being stripped. Sgt Shea arrived at this time. After a short time he said for someone to shut him up, meaning Kotona [sic], who was still resisting, complaining and talking nonstop. Sgt Shea repeated for someone to "shut him the fuck up". Shea then came around the right side of [the] pile and placed a kick into Kotona's [sic] side.

(Doc. 146, at 6).

Correctional Officer William Travis reported that:

On FEB 22nd I . . . observed Sgt Shea enter cell 8 RHU and give loud verbal commands, "Shut him the fuck up. Shut him the fuck up." He then walked around me and kicked Inmate Katona in the side.

(Doc. 146, at 8).

Correctional Officer Thomas Disimone reported that:

At approx. 0810 hrs on February 22, 2010 [sic] I responded to a rover call on RHU. I entered Mr. Katona's cell RHU 8. Mr. Katona was face down on the floor with his hands cuffed behind his back and his legs shackled. I held Mr. Katona's legs so he could not kick. Officers Okula and Carver held him at the top so he could not move until the restraint chair came. Mr. Katona was saying get off me I can't do nothing get off me. Sgt Shea entered yelling shut up shut him up shut him the fuck up now. Sgt Shea kicked Katona in the side close to where my face and hands were. This was done after de-escalation and, an [sic] controlled environment, without provocation.

(Doc. 146, at 9).

Correctional Officer Vincent Stasulli reported that, on February 22, 2011, at approximately 8:14 a.m.:

I . . . was assisting with securing Inmate Katona. The situation had ceased to a controlable enviorment [sic]. Upon telling Officer Storm to exit the cell and go to medical for evaluation, Sgt Shea arrived. I stood up and asked Sgt Shea if we needed the restraint chair or the reeves [stretcher]. Sgt Shea answered the restraint chair, Sgt Shea began to yell something at Inmate Katona, upon finishing his statement he (Sgt Shea) kicked Inmate Katona with his right (foot/boot) in the right mid-section/rib area. . . . [After Katona had been transported to the intake area,] I asked Sgt. Shea to take a walk with me down the intake corridor. While standing in front of Medical and directly under the camera I confronted Sgt Shea about his excessive/punative [sic] treatment of Inmate Katona. I told Sgt Shea that he "fucked up bad in that cell", that he is a Seargent [sic] of the facility and a C.E.R.T. member. I explained to Sgt Shea

9

that the behavior exhibited in front of 7 other staff members was inexcusable and that again he "fucked up bad". Sgt. Shea then stated that he knows he "fucked up" but felt that he could trust everyone. I then stated that he couldn't and needed to report his behavior.

(Doc. 146, at 10–11).

Even when viewed in the light most favorable to Shea, this evidence marshaled by Katona is sufficient to establish a prima facie case of the use of excessive force by Shea. At the time that Shea kicked him, Katona had already been subdued — with his hands cuffed behind his back, his legs shackled, two officers holding him down on the floor, and a third holding his legs held so he could not kick. The evidence of record uniformly depicts a situation in which any security threat that had been posed by Katona was under control by the time Shea entered the cell, and that there was no need whatsoever for Shea to kick the prone and restrained inmate to maintain or restore discipline. Rather, in light these circumstances, coupled with Shea's statements preceding the blow (telling the others to "shut him the fuck up"), immediately following the blow (asking whether others had gotten their "shots in"), and later when confronted by another officer (admitting that he had "fucked up" but expressing confidence that he could trust the others not to report his actions), Katona has established a prima facie case that Shea kicked Katona "maliciously or sadistically for the very purpose of causing harm," and that he is thus entitled to judgment as a matter of law on the issue of Shea's liability for the use of excessive force against Katona. See *Hudson*, 503 U.S. at 6.

### 2. Shea's Opposition to Partial Summary Judgment

The movant having made a prima facie showing that he is entitled to summary judgment, the burden then shifts to Shea to demonstrate the existence of a genuine dispute of material fact. See Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. But in his opposition

papers, Shea has cited no materials in the record whatsoever to demonstrate the existence of a genuine dispute of material fact. Instead, Shea relies exclusively on an exceptionally sparse argument that Katona has failed to meet his burden of making a prima facie showing that he is entitled to summary judgment. The entirety of Shea's argument is stated in three apparently boilerplate sentences, reproduced verbatim below:

> Plaintiff has not put forth any pleadings, depositions, answers to interrogatories, admissions on file or affidavits to show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. In fact, Plaintiff has not put forth any factual evidence and has only asserted his own legal conclusions and regurgitated the contents of his Complaint in an effort to prove that there is no genuine issue of material fact, thus entitling him to summary judgment. While a pro se litigant is given some latitude with respect to his pleadings, a pro se plaintiff is not excused from complying with the rules of procedural and substantive law.

(Doc. 150, at 4–5 (citations omitted)).

But in point of fact, Katona *has* put forth factual evidence: the various incident reports prepared and filed by five other correctional officers describing Shea's assault on Katona. (Doc. 146, at 5–11). Curiously, Shea's opposition papers do not address these documents, ignoring this evidence altogether. Based on his particular choice of boilerplate language, referencing "any pleadings, depositions, answers to interrogatories, admissions on file or affidavits," Shea appears to imply that these documents are not competent evidence in support of a motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure was most recently amended effective December 1, 2010. The current version of Rule 56, which has been in place now for more than four years, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule further provides that

11

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, *documents*, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> Fed. R. Civ. P. 56(c)(1) (emphasis added).

Shea's opposition brief does not include "documents" in its recital of the various types of evidence upon which summary judgment may be based. Instead, Shea's recital appears to rely on an earlier formulation of the summary judgment rule, which provided:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Fed. R. Civ. P. 56(c) (eff. Aug. 1, 1987) (superseded by amended rule eff. Dec. 1, 2007).

Indeed, it is this version of the rule that Shea has quoted in the "standard of review" section of his opposition brief, filed nearly seven years after it was eliminated by an amendment,[6] demonstrating the inherent peril of relying on boilerplate language. (*See* Doc. 150, at 2).

Katona has made a satisfactory prima facie showing that he is entitled to summary judgment based on specified materials in the record. Shea has failed to demonstrate the existence of a genuine dispute of material fact. Accordingly, it is recommended that Katona's motion for partial summary judgment be granted and judgment with respect to

---

[6] Between December 1, 2007, and December 1, 2010, Rule 56(c) provided that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (eff. Dec. 1, 2007) (superseded by amended rule eff. Dec. 1, 2010).

Shea's liability for use of excessive force be entered in favor of Katona, with the measure of damages reserved for trial.

### B. THE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As previously noted, ordinarily, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment, and if that prima facie showing has been made, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Here, the Medical Defendants have moved for summary judgment, but Katona has failed to file a brief in opposition or any other papers contesting the Medical Defendants' motion. Katona's failure to actively oppose the Medical Defendants' motion for summary judgment implicates two local rules, which provide that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion," L.R. 7.6, and that all material facts set forth in the movant's statement of material facts "will be deemed to be admitted unless controverted" by a counter-statement of material facts by the non-movant, L.R. 56.1.

However, Katona's failure to respond to the motion does not mean that the Medical Defendants are automatically entitled to summary judgment. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). These local rules must be construed and applied in a manner consistent with Rule 56 of the Federal Rules of Civil Procedure. *See Anchorage Assocs.*, 922 F.2d at 174. Thus, in the context of a motion for summary judgment, a non-movant's failure to file an opposition brief and counter-statement of material facts is "construed as effecting a waiver of [the non-movant's] right to controvert the facts asserted by the moving party in the motion for summary judgment or the

supporting material accompanying it." *Anchorage Assocs.*, 922 F.2d at 175–76. The moving party must nevertheless establish that, based on the facts set forth in support of its motion, it is entitled to judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175–76; *see also Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Miller v. Ashcroft*, 76 Fed. App'x 457, 462 (3d Cir. 2003) ("Even though the applicable [Middle District of Pennsylvania] local rules provide that a summary judgment motion is to be considered unopposed and its statement of material facts admitted where a responsive brief is not timely filed, the Magistrate Judge was still required to find that the undisputed facts warranted judgment as a matter of law.") (citations omitted).

In other words, in the absence of active opposition by the non-movant, the two-step, burden-shifting analysis that normally applies on summary judgment is abbreviated to just the first step, requiring the moving party to make a prima facie showing that it is entitled to summary judgment, based on the undisputed facts of record. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

In his second amended complaint, Katona asserts a claim against the three Medical Defendants for failure to provide him with adequate medical care, in violation of the Eighth Amendment of the United States Constitution. Katona contends that an unnamed facility psychiatrist who approved his placement in a restraint chair for two hours immediately following the February 22, 2011, incident violated Katona's right to be free from cruel and unusual punishment by failing to provide him with prompt medical care for the injuries he suffered in that incident. (Doc. 116, at 8). Katona further contends that nurses Johnson and Oswald violated his right to be free from cruel and unusual punishment by failing to order x-rays of his ribs or provide him with any pain medication for a period of seventeen days after

the incident. (Doc. 116, at 8). Katona's claim against the nurses with respect to their failure to order x-rays was previously dismissed by this Court, leaving only his claim against them for failure to provide him with pain medication over a prolonged period of time. (Doc. 147; see also Doc. 142).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). "In order to establish a violation of [an inmate's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (2003). With respect to the deliberate indifference prong of the *Estelle* standard, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Thus, "[m]ere medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 Fed. App'x 142, 146 (3d Cir. 2012). Instead, the evidence must show that the defendant "knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment." *Lopez*, 499 Fed. App'x at 146.

The unrebutted facts of record establish that, contrary to the allegations of the second amended complaint, Katona received prompt medical care, including pain medication. At 8:30 a.m., just minutes after the incident in which Katona was injured, a nurse performed an initial medical assessment of Katona and cleaned him up. (Doc. 153, at 4; Doc. 153-3, at

3–4). He was also evaluated by a non-party physician's assistant, Jen Mroz, who provided a verbal order for x-rays of Katona's mandible and facial bones and prescribed a 650 milligram dose of acetaminophen by mouth, as needed, up to three times daily until he had an opportunity to be seen by a physician. (Doc. 153, at 4; Doc. 153-3, at 4; Doc. 153-1, at 34). Medical records indicate that Katona in fact received the prescribed acetaminophen. (Doc. 153, at 4; Doc. 153-4, at 2–3; Doc. 153-1, at 34). The facility psychiatrist, Dr. Dedania, provided a contemporaneous telephone order authorizing Katona's placement in a restraint chair for up to two hours. (Doc. 153-3, at 3). Thereafter, Katona's medical status was assessed by a nurse at fifteen minute intervals until he was released from the restraint chair. (Doc. 153, at 3–4; Doc. 153-2, at 2; Doc. 153-3, at 4; Doc. 153-1, at 33-35). At 9:30 a.m., he was seen by a licensed social worker, Jennifer Pitoniak. (Doc. 153, at 4; Doc. 153-3, at 2; Doc. 153-1, at 34). At 10:30 a.m., Katona was released from the restraint chair. (Doc. 153, at 3; Doc. 153-2, at 2; Doc. 153-3, at 4).

Based on these undisputed facts, no reasonable jury could conclude that the Medical Defendants denied Katona adequate medical care in the wake of the February 22, 2011, incident in which he was injured. He was assessed and received medical treatment within minutes of being injured, including pain medication. By failing to file a brief in opposition or a counterstatement of material facts, Katona has admitted to these facts set forth by the Medical Defendants. At most, all that remains of Katona's cause of action against the Medical Defendants is a claim of "[m]ere medical malpractice, negligence, [or] courses of treatment inconsistent with the desires of the prisoner . . . [which] do not constitute deliberate indifference to serious medical needs." *See Lopez*, 499 Fed. App'x at 146. Accordingly, it is recommended that the Medical Defendants' motion for summary

16

judgment be granted and judgment be entered in their favor with respect to Katona's claims of constitutionally inadequate medical care.

### III. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The Plaintiff's motion for partial summary judgment (Doc. 144) be **GRANTED**;

2. The Clerk be directed to enter judgment for plaintiff Matthew Katona with respect to defendant James Shea's **liability only** under Count One of the second amended complaint (Doc. 116, at 7–8), which asserts an Eighth Amendment excessive force claim pursuant to 42 U.S.C. § 1983, with a determination as to damages, if any, reserved for jury trial;

3. The Medical Defendants' motion for summary judgment (Doc. 151) be **GRANTED**;

4. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

    a. the Clerk be directed to enter separate final judgment against the Plaintiff and in favor of defendants Wendy Michele Johnson, Michelle Lynn Oswald, and "Jane Doe" (Facility Psychiatrist) with respect to all claims against them, and

    b. the Court further **FIND** and **CERTIFY** that there is no just reason for delay of entry of such final judgment as the nature of the claims determined by such judgment is such that no appellate court will have to decide the same issue more than once even if there are subsequent appeals, see *Curtiss Wright Corp. v. Gen. Electric Co.*, 446 U.S. 1, 8 (1980);

5. The Clerk be directed to terminate defendants Wendy Michele Johnson, Michelle

Lynn Oswald, and "Jane Doe" (Facility Psychiatrist) as parties to this case upon expiration of the time for filing notice of appeal from the separate final judgment in their favor, provided no such notice of appeal is timely filed; and

6. The case be remanded to the undersigned for further proceedings.

                                                **BY THE COURT:**

**Dated: January 5, 2015**                         *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW KATONA,<br><br>  Plaintiff<br><br>v.<br><br>DONNA ASURE, Warden, et al.,<br><br>  Defendants | CIVIL ACTION NO. 1:11-CV-01817<br><br>(RAMBO, J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 5, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: January 5, 2015                              s/ *Karoline Mehalchick*
                                                                **KAROLINE MEHALCHICK**
                                                                **United States Magistrate Judge**