# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW KATONA,<br><br>            Plaintiff<br><br>     v.<br><br>DONNA ASURE, et al.,<br><br>            Defendants | CIVIL ACTION NO. 1:11-CV-1817<br><br>((MEHALCHICK, M.J.) |

## **MEMORANDUM**

Matthew Katona ("Katona"), brought a complaint pursuant to 42 U.S.C.A. § 1983 alleging excessive force in violation of the Eighth Amendment against a variety of defendants, including James Shea, then an employee of State Correctional Institute (SCI) – Coal Township, a Pennsylvania state prison. (Doc. 1). Summary judgment as to liability against Shea was granted on February 3, 2015. (Doc. 159); (Doc. 162). The remainder of the claims having been resolved, the Court conducted a non-jury trial on July 9, 2018 on the sole remaining issue of damages against Shea. (Doc. 210). Shea did not appear at the trial and has not filed any documents in connection therewith. (Doc. 210). The Court, having heard the testimony and reviewed all documentary evidence, now enters the following Findings of Fact, Conclusions of Law, and Decision pursuant to Fed.R.Civ.P.52.

# FINDINGS OF FACT

The following findings of fact are based upon the testimony and evidence that the Court found credible at trial.

I. **BACKGROUND**

1. On October 3, 2011, Katona commenced this action by filing a complaint (Doc. 1) alleging multiple violations of First, Eighth, and Fourteenth Amendments of the Constitution, and pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

2. Specifically, Katona claimed to have been subjected to the use of excessive force by several correctional officers at the Monroe County Correctional Facility, including Defendant James Shea, and then denied medical care by the Medical Defendants.

3. The Court entered summary judgment against Defendant James Shea as to liability only on February 3, 2015. (Doc. 159; Doc. 162).

4. All remaining claims against the remaining defendants were resolved without the need for trial.

5. The Court and Plaintiff directed notifications of the bench trial to James Shea, but Shea did not appear. (Doc. 213 at 2, line 11-12; 19-20.)

II. **INJURIES SUSTAINED AND ON-GOING MEDICAL ISSUES**

6. Katona sustained a bruised and swollen right eye from the assault by Shea. (Doc. 213 at 6, line 20-21).

7. While Katona was on the ground, Shea kicked him in the ribs multiple times, causing soreness which lasted for about a month. (Doc. 213 at 8, line 8); (Doc. 213 at 11, line 9-10).

8. After the incident, correctional officers put Katona into a restraining chair. (Doc. 213 at 10, line 13).

9. The prison nurse wiped blood from Katona's eyes immediately following the incident, but it was approximately two weeks before Katona was taken for X-Rays. (Doc. 213 at 10, line 12-15).

10. This delay occurred despite Katona's numerous sick calls complaining of pain. (Doc. 213 at 10, line 16-17).

11. Katona still has nightmares regarding the assault and gets "jumpy" around anybody in uniform. (Doc. 213 at 9, line 11-13). The nightmares contribute to an on-going problem of sleeplessness. (Doc. 213 at 13, line 12-18).

12. Katona endured pain for "a few months" after the incident. (Doc. 213 at 13, line 7-8).

13. Katona has no lasting physical injuries. (Doc. 213 at 10, line 3-5).

## III. HISTORY AND CONDUCT OF JAMES SHEA

14. Shea pleaded guilty to simple assault on Katona. (Katona's Exhibit 1 at 2).

15. Shea has not disputed that he arrived that other correction officers were already engaging with Katona. (Doc. 213 at 15, line 2-4).

16. The accounts of other corrections officers corroborate Shea's late arrival (Doc. 213 at 15, line 6-9), as does the account of Katona himself. ((Doc. 213 at 8, line 23).

17. According to prison disciplinary records, Shea had previously used excessive force on an inmate. (Katona's Exhibit 5).

18. Katona's expert opined that Shea should not have been hired at all based on his disciplinary history. (Katona's Exhibit 4).

19. Shea was ultimately terminated from employment. (Katona's Exhibit 2); (Katona's Exhibit 6).

## CONCLUSIONS OF LAW

Katona has alleged violations of his rights under the Eighth Amendment to the United States Constitution, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Curran v. Spyder*, No. 1:11–cv–2127, 2014 WL 4672457, *3 (M.D. Pa. September 18, 2014). The events giving rise to the claims occurred at SCI Coal Township, a prison located in Northumberland County, Pennsylvania; as such, venue is proper in the Middle District of Pennsylvania. 28 U.S.C. § 1391(b); *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994).

I. **AVAILABILITY OF DAMAGES**

1. It is well settled that compensatory damages under § 1983 are governed by general tort-law compensation theory. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978). In other words, "damages are available under [§ 1983] for actions 'found ... to have been violative of ... constitutional rights and to have caused compensable injury....' " *Id.* (emphasis omitted) (quoting *Wood v. Strickland*, 420 U.S. 308, 319 (1975)).

2. Punitive damages are available in a § 1983 action. *Carlson v. Green,* 446 U.S. 14, 22 (1980).

3. Individual public officers are liable for punitive damages for their misconduct on the same basis as other individual defendants. *Smith v. Wade*, 461 U.S. 30, 35 (1983).

4

4. Punitive damages may be awarded against a public official in his individual capacity; not his official capacity. *Salitt v. Stankus*, 720 F. Supp. 2d 645, 648 (M.D. Pa. 2010) (citing *Carver v. Foerster,* 102 F.3d 96, 97 n. 1 (3d Cir.1996)).

II. DAMAGE AWARDS

A. COMPENSATORY DAMAGES

5. Substantial compensatory damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right. *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (citations omitted).

6. "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308 (1986).

7. "[I]n order to bring a claim for mental or emotional injury suffered while in custody, a prisoner must allege physical injury." *Allah*, 226 F.3d at 250.

8. Compensable damages for prisoners involve only pain and suffering; not medical costs or lost earnings. *Dickens v. Taylor*, 655 Fed. Appx. 941, 946 (3d Cir. 2016).

9. District courts have awarded a range of compensatory damages for injuries comparable to Katona's:

    a. Over twenty years ago, a District Court awarded $1,250 to an inmate who obtained a black eye as a result of a scuffle. *Hynes v. LaBoy*, 887 F. Supp. 618, 625-26 (S.D.N.Y. 1995).

    b. A Circuit Court upheld a compensatory damages award of $3,500 against corrections officers who kicked an inmate in the ribs, among other places, and

the pain persisted for months after the incident. *Magee v. Dixon Correctional Institute*, 20 F.3d 470 (5th Cir. 1994).

    c. More recently, a Pennsylvania District Court awarded an inmate $3,000 in compensatory damages, based in part on mental anguish suffered by a pretrial detainee due to an assault by a corrections officer, and the reasonably certainty that such mental suffering would continue in the future, *Kipp v. Mentz*, No. 2:11–cv–1553, 2013 WL 2285980, *1-3 (W.D. Pa. May 23, 2013).

10. Katona received a black eye, was kicked in the ribs, causing extended soreness, and continues to suffer from anxiety due to the assault by Shea. Katona is bereft of any enduring physical ailments.

11. The Court finds $7,000.00 is an appropriate compensatory damages figure.

B. <u>PUNITIVE DAMAGES</u>

12. A punitive damages award in a § 1983 suit is necessarily a fact-intensive inquiry. *See In re Bayside Prison Litigation*, 331 Fed. Appx. 987, 992-94 (3d Cir. 2009) (citations omitted).

13. Defendant's conduct must amount to more than a bare violation of constitutional rights, where compensatory damages alone are sufficient. *Dickens*, 655 Fed. Appx. at 947. In general, punitive damages "represent a limited remedy, to be reserved for special circumstances." *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir. 1989) (citing *Cochetti v. Desmond,* 572 F.2d 102, 105–06 (3d Cir.1978)).

14. A fact finder may assess punitive damages in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others." *See Wade*, 461 U.S. at 56.

15. Deterrence from future constitutional violations is a primary policy of punitive damages. *Wade*, 461 U.S. at 47 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981)). Punishing the wrongdoer is another policy which supports punitive damages in a 1983 action. *Shrey v. Kontz*, 981 F. Supp. 2d 333, 350 (M.D. Pa. 2013). The punitive damages award must not be disproportionately excessive to the harm defendant caused plaintiff. *Sallitt*, 720 F. Supp. 2d at 650.

16. To determine whether punitive damages are excessive, the Supreme Court requires consideration of three factors (1) the degree of reprehensibility of the defendant's conduct, which receives the heaviest weight; (2) the disparity between the harm suffered (compensatory damages) and the punitive damages awarded; and (3) the possible criminal and civil sanctions for comparable misconduct. *See Shrey*, 981 F. Supp. 2d at 350-51 (citing *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575, 580, 583 (1996).

17. A punitive damages award in a § 1983 suit is necessarily a fact-intensive inquiry. *See Shrey*, 981 F. Supp. 2d at 349-51.

18. The Court finds that Shea's conduct in assaulting Katona was in fact based on a malicious intent. Shea was one of the last officers to arrive at the scene. Shea kicked Katona in the ribs while he was already on the floor. Further, Shea has been the subject of prior prison grievances, demonstrating a need for punitive damages as a deterrent of future misconduct. For these reasons, the Court awards $3,000 in punitive damages.

## CONCLUSION

For the foregoing reasons, the court awards $7,000.00 in compensatory damages and $3,000.00 in punitive damages to Katona. An appropriate Order follows.

Dated: February 14, 2019

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**